In the Matter of the Construction of the Will of GERTRUDE OSSONT, Deceased.

Surrogate's Court, Lewis County, August 11, 1955.

*Reed & Reed* for Black River National Bank, as administrator with the will annexed of Gertrude Ossont, deceased.

*John C. Young* and *Stephen M. Obremski* for Harold B. Sands and another, as executors under the will of John E. Sands, deceased.

*Glennetta A. Sands,* in person.

MORAN, S. This a proceeding for the construction of the will of Gertrude Ossont, who died on the 7th day of February, 1955, in the town of Lowville, New York. Her last will and testament, bearing date September 12, 1936, was offered and admitted to probate in this court on March 21, 1955; the executor named in her will was deceased, and letters of administration with the will annexed were issued on the 6th day of April, 1955, to the Black River National Bank of Lowville, New York.

During the trial, certain rulings were made with reference to exhibits offered in evidence. Exhibit " S ", which shows the closing out of one of the bank accounts of Gertrude Ossont, the decedent, and on which the court reserved decision, is received in evidence. Exhibit " T ", which is the transfer tax deposition filed in the estate of Nicholas Ossont, the deceased husband of the decedent herein, and on which the court reserved decision as to the receiving of such deposition in evidence, such deposition is not received, as the court is unable to see where the deposition has any bearing upon the estate of this decedent.

The body of the will of the decedent, concededly written in her own handwriting, on a blank form for wills, is as follows: " First. I give and bequeath to my beloved husband, Nicholas Ossont, the store and place of residence at Petries Corners, N. Y..

Other provisions are made in joint bank accounts. To my nephew, Harold Sand and Niece, Janis Sands, I bequeath three hundred (300) dollars each. To my niece Gertrude Budd Radley I bequeath Six hundred (600) dollars. To my sister, Glennie A. Sands, I bequeath the residue of my bank account; also thirty four (34) shares Niagara Hudson and Six shares of Northern New York Utilities. This is the disposition of my holdings on the present date, Sept. 12, 1936.''

Shortly after making her will, the joint bank accounts, of which she speaks, were transferred to the sole name of her husband, Nicholas Ossont, who later died on March 6, 1942, leaving a last will and testament, admitted to probate in this county, by which he devised and bequeathed to his widow, the decedent herein, all of his property, real and personal, and under which she was appointed executrix.

At the time of the making of the will herein by the decedent, it is conceded she was the owner of a store, and residence in connection therewith, at Petries Corners, in this county, with about one-half acre of land; also, the owner of three bank accounts standing in her own name, as follows:

Black River National Bank, Lowville, N. Y.,
    savings account ............................$1,296.95
Watertown Savings Bank, Watertown, N. Y......... 1,781.73
Jefferson County Savings Bank, Watertown, N. Y... 833.03

and was the sole owner of thirty-four shares of Niagara Hudson stock, which had a market value of approximately $14⅜ per share, and six shares of Northern New York Utilities stock which had a market value of $105 to $108 per share.

At the time of her death, the decedent was the owner of the store and dwelling house at Petries Corners aforesaid, bank accounts having a total value of approximately $36,468.74, some government bonds, a diamond ring, and other articles of household personal property of small value. The stock had been disposed of during her lifetime.

It is the contention of Glennetta A. Sands that under the terms of the will, the bequest of the stock is a general legacy, and not specific, and that she is entitled to cash value of the stock, in view of the fact that it was disposed of during the lifetime of the decedent; also, that she is the owner of all bank accounts owned by the decedent at the time of her death. On the other hand, it is the contention of the representatives of the estate of John E. Sands, now deceased, that the bequest of the stock is a specific legacy and is adeemed; that the real estate, govern-

ment bonds, diamond ring, household furniture and other property received by the decedent after the date of the making of her will, on September 12, 1936, is not disposed of by her will and that the decedent died intestate as to this undisposed of property, and such property is inherited by her distributees, namely, Medora Budd, her sister, the estate of John E. Sands, a deceased brother, and Glennetta A. Sands, sister.

The thirty-four shares of stock of the Niagara Hudson Power Corporation were exchanged for thirty-four shares of Niagara Mohawk Power Corporation on February 24, 1937, and were sold on April 26, 1950; the six shares of Northern New York Utilities stock were exchanged on September 30, 1937, for six shares of Central New York Power preferred stock, and these shares were redeemed April 25, 1946; so that at the time of the death of the decedent, she did not own the thirty-four shares of Niagara Hudson stock or the six shares of Northern New York Utilities stock, and both of these companies at the time of her death had been dissolved, and such stock is not obtainable.

This bequest was a specific bequest, and is adeemed. As is so aptly said in *Beck* v. *McGillis* (9 Barb. 35, 59): "The thing given is gone, and no court is at liberty to substitute a different thing for that which the deceased had himself given."

In this case, the stock was gone, it could not be substituted by purchase of similar stock, and the court is not in position to substitute money for a specific bequest of stock. (*Matter of Jay*, 189 Misc. 40; *Matter of Brann*, 219 N. Y. 263; *Matter of Ireland*, 257 N. Y. 155.)

The court cannot remake the will of a decedent. On the other hand, the court should attempt to construe the intent of the testator. The decedent made gifts of $300 each to a niece and nephew and $600 to another niece, and then bequeathed the "residue of my bank *account*" to a sister. At the time of making the will she had three bank accounts standing in her own name, one in the Black River National Bank, one in the Watertown Savings Bank and one in the Jefferson County Savings Bank. Prior to her death she closed out the Jefferson County Savings Bank account. She states in her will, in the last sentence, "This is the disposition of my holdings on the present date, Sept. 12, 1936"; there is no residuary clause. It is true the courts do not favor intestacy where there is a will; however, the court cannot make over the will. At the time of her death, Mrs. Ossont was the owner of real property, government bonds, a diamond ring and some household furniture, all

of which was undisposed of under her will. The several bank accounts owned by her at the time of her death, other than the Black River Bank account and the Watertown Savings Bank account, were acquired by her subsequent to the making of her will. Generally, a will speaks as of the date of death, but in this will the decedent seems to speak as of the date of the making of the will, in fixing the date of her holdings as of the date of the will and the disposition of her property as of that date.

While she gives to her sister, Glennie A. Sands (Glennetta A. Sands), '' the residue of my bank account '' she intends to give what is left of her bank accounts, then existing, namely, the Black River National Bank, the Watertown Savings Bank and the Jefferson County Savings Bank. At her death, the Jefferson County Savings Bank account did not exist; it had been closed out by her. I therefore hold that after paying the three bequests, totaling $1,200, to the nephew and nieces, from the one or both of the two accounts, Black River National Bank, Account No. 355, and Watertown Savings Bank, Account No. 17812, the residue of these two accounts, with accumulations to date of death, are the property of Glennetta A. Sands, her sister.

A will generally speaks as of the date of death, but in this will the decedent makes a disposition of her property as of the date of the will: '' This is the disposition of my holdings on the present date, Sept. 12, 1936 ''. There is nothing in the will that can be construed as a residuary clause, to dispose of after-acquired property, in the face of the above sentence. At her death she owned real estate, government bonds, a diamond ring, household furnishings and the remaining bank accounts over and above the Black River National Bank and Watertown Savings Bank accounts. She is presumed to know the contents of her own will; and after the death of her husband, and the purchase by her of government bonds, she must have known there was no disposition of a part of her property.

When she fixed the disposition of her holdings as of the date of her will, with no residuary clause, she failed to provide for after-acquired property. In *Wetmore* v. *Parker* (52 N. Y. 450, 463), the court, quoting from a Connecticut case (21 Conn. 616), says: '' ELLSWORTH, J., laid down the rule correctly, when he said * * * ' Whenever a testator refers to an actually existing state of things, his language should be held as referring to the date of the will, and not to his death.' '' (See, also, *Van Alstyne* v. *Van Alstyne*, 28 N. Y. 375, 377, and *Stanfield* v. *Thorne*, 217 App. Div. 767.)

The decedent died intestate as to her real estate, government bonds, diamond ring, household furnishings and the remaining bank accounts, other than the Black River National Bank, Account No. 355, and Watertown Savings Bank, Account No. 17812, and any other assets not hereinbefore provided for. A decree may be entered accordingly.