**Booker T. HARRIS, Plaintiff,**

v.

**Jim HOWELL; United Companies Mortgage of Alabama, Inc., a corporation; United Companies Financial Corporation, a corporation, Defendants.**

**Civ. A. No. CV 89–L–0115–S.**

United States District Court,
N.D. Alabama, S.D.

July 18, 1989.

James H. Faulkner, Birmingham, Ala., for Booker T. Harris.

N. Lee Cooper of Maynard, Cooper, Frierson & Gale, Birmingham, Ala., for Jim Howell, United Companies Mortg. of Alabama, Inc. and United Companies Financial Corp.

## MEMORANDUM OPINION

LYNNE, District Judge.

This case came on to be heard on motion for summary judgment filed on behalf of all defendants by United Companies Financial Corporation ("UCFC") and United Companies Mortgage of Alabama, Inc. ("UCMA"). The motion is supported by the Affidavits of Cathy Hopkins and Ridgley Wyvill, each an employee of UCFC, the Affidavit of Robert Austin, who handled certain loan closings and foreclosure connected to this dispute, and two volumes of deposition transcripts containing testimony of the plaintiff. At the hearing on this case, defendant Jimmy Howell joined in the motion.

## I. FINDINGS OF FACT

By complaint filed December 29, 1988, Plaintiff Booker T. Harris claims that the defendants violated the Truth-in-Lending

Act and committed fraud in the course of two separate loan transactions, one made on July 1, 1982 and the other made on January 17, 1986. He also claims that Jimmy Howell, agent for UCFC and UCMA, diverted for his personal use from each loan transaction a sum in excess of $2,000.00. Harris also challenges the December 1988 foreclosures on property mortgaged as security for the two loans. The 1982 Loan was secured by a mortgage on Harris' residence. The 1986 Loan was secured by a mortgage on Harris' business, Harris Package Store, which he has owned and operated for over ten years. Harris was graduated from Dunbar High School and attended trade school for three years. He admits to paying, after being sued, a debt to a local bank and falling past due to other creditors.

Plaintiff has joined this matter by filing a Response to Defendants' Motion for Summary Judgment. With respect to the 1982 loan, the Complaint and the Response allege that:

1. Plaintiff was told his annual rate of finance charge would be 16.00%;

2. The Truth-in-Lending Disclosure Statement (the "TIL Disclosure") revealed an Annual Percentage Rate ("A.P.R.") of 26.0%; [1]

3. Plaintiff did not receive proof of credit life coverage;

4. Plaintiff did not receive adequate credit life coverage;

5. Plaintiff was not informed of the right to decline credit life insurance.

Plaintiff apparently did not receive a copy of his 1982 credit life insurance; the purchase, however, is confirmed on the TIL Disclosure. By affidavit of Ridgley Wyvill, UCMA has established that the credit life coverage was for the full face amount of the note and in place at all times. A Diminishing Term Life Insurance Statement received by Plaintiff recites that the insurance was not required and that plaintiff was provided an opportunity to decline coverage.

With respect to the 1986 loan, Plaintiff alleges that:

1. He was told his interest rate would be 14.0%;

2. The TIL Disclosure reveals an A.P.R. of 19.6%.

3. He was not told he would be charged points for the loan;

4. The TIL Disclosure shows a loan fee of $2,306.90 and treats this amount as a pre-paid finance charge.

United Companies' Promissory Note, in the amount of $13,400.00, confirms what Harris was told: that an interest rate of 14.0% would be charged in the transaction. The TIL Disclosure clearly informed Harris that he was paying a loan fee of $2,306.90 on the 1986 loan. The fee, a pre-paid finance charge, properly was disclosed and subtracted from the Amount Financed in accordance with the Truth-in-Lending Act and Regulation Z.[2] Several of the loan documents signed by the plaintiff and in his possession since the loan closing, state in bold, capitalized type: "CAUTION–IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT."

## II. SUMMARY OF LAW

▆▆▆ With respect to the fraud claims, defendants first challenge the plaintiff's ability to reasonably rely on any alleged misrepresentation. Under the law of Alabama, an oral misrepresentation, even if proven, does not give rise to a fraud claim where a party receives written disclosures which contradict the oral statements. Those written statements place a party on notice that the oral representations may not be true. This notice undercuts any reasonable reliance, which is an essential element of a fraud claim. *Bedwell Lumber Co., Inc. v. T & T Corp.*, 386 So.2d 413, 415 (Ala.1980). It is fundamental that a plaintiff cannot blindly accept statements

---

**1.** The TIL Disclosure reveals an Annual Percentage Rate ("A.P.R.") of 20.0%, not 26.0% as claimed by Plaintiff.

**2.** The loan fee causes the difference between the rate of simple interest and the Annual Percentage Rate.

from the defendant as true, as "it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests." *Torres v. State Farm Fire & Casualty Co.*, 438 So.2d 757, 758 (Ala.1983). A borrower has a "duty to read and inspect each document which might affect that person's legal rights or liabilities." *Ramp Operations, Inc. v. Reliance Insurance Co.*, 805 F.2d 1552, 1556 (11th Cir.1986).

Booker T. Harris' misrepresentation claims are undercut by disclosures made to him at the time of his loan closings. Harris received various documentation of the two transactions, including Promissory Notes, TIL Disclosures, and Credit Life Certificates. The disclosures contained within these documents preclude Plaintiff's ability to satisfy the reasonable reliance test necessary to establish a fraud claim.

Defendants alternatively contend that the Plaintiff's fraud claims are barred by the statute of limitations and laches. The general statute of limitations for claims for fraud or deceit was one year in 1982 and two years in 1986. *Ala.Code* 1975, § 6–2–39. In appropriate instances, the running of the statute is delayed until the time of "the discovery by the aggrieved party of the fact constituting the fraud." *Ala.Code* § 6–2–3. Discovery of fraud occurs when "the party actually discovered the fraud, or had facts which, upon closer examination, would have led to the discovery of the fraud." *Kelly v. Smith*, 454 So.2d 1315, 1317 (Ala.1984).

The Court's inquiry, then, must focus on when the Plaintiff had knowledge of the facts constituting the alleged fraud; his actual knowledge of the fraud itself is immaterial. The very same documents in evidence which undermine Plaintiff's reasonable reliance on any alleged representations also prove that the claims are barred by the statute of limitations. The plaintiff knew or should have known of any problems with either his 1982 Loan or his 1986 Loan shortly after the loan closings. He chose, however, not to bring the complaint until December 29, 1988, over six years after the 1982 transaction and almost three years after the 1986 closing. Harris' knowledge of facts "which should have prompted inquiry" results in a time bar to the present suit. *Cf. Kelly v. Smith*, 454 So.2d at 1317.

Plaintiff's remaining claims may be readily disposed of without extensive discussion. First, the Truth-in-Lending Act claims are barred by the statute of limitations contained in 15 U.S.C. § 1640(e). Second, the evidence, as established by the Affidavit of Cathy Hopkins and the TIL Disclosures attached as exhibits to the depositions, shows that Howell did not divert any loan proceeds for his personal use. Third, the terms of the loan transactions do not reflect usury or unconscionability as contemplated by either §§ 8–8–5 or 5–19–16 of the Alabama Code. This is particularly true given plaintiff's credit status. The rates and terms of the two loans, each with an Annual Percentage Rate approximating 20.0%, reflect a transaction to which reasonable parties would enter. Finally, the Affidavit of Robert Austin establishes that the foreclosures were noticed and accomplished within the procedural guidelines of Alabama law. The foreclosures also were valid, substantive acts which UCFC and UCMA were entitled to take, as Plaintiff was in arrears on his debt and, as reflected in the Court's earlier findings herein, the arrearage was *not* attributable either to a diversion of funds by Jimmy Howell or to any alleged fraud on the part of any of the defendants.

For the above and foregoing reasons United Companies Financial Corporation, United Companies Mortgage of Alabama, Inc. and Jimmy Howell are entitled to summary judgment on each and every claim raised by the Plaintiff.